IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN/WESTERN DIVISION

NO. 2:92-CR-26-M-1
NO. 5:94-CR-54-M-1

UNITED STATES OF AMERICA,    )
                             )
v.                           )                ORDER
                             )
CALVIN ANTONIO SPENCER,      )
                             )
        Defendant.           )

This matter is before the court on defendant's motions for compassionate release pursuant

to 18 U.S.C. § 3582(c)(1)(A). (United States v. Spencer, No. 2:92-CR-26-M-1, (D.E. 72)

(E.D.N.C. June 2, 2020) ("Spencer I"); United States v. Spencer, No. 5:94-CR-54-M-1, (D.E. 37)

(E.D.N.C. June 18, 2020) ("Spencer II")).[1] Both motions have been fully briefed. For the reasons

stated below, the court denies the motions.

BACKGROUND

In Spencer I, on August 2, 1993, defendant pleaded guilty, pursuant to a plea agreement,

to one count of armed bank robbery, in violation of 18 U.S.C. § 2113(a), (d), and one count of

using a firearm in a crime of violence, in violation of 18 U.S.C. § 924(c). (Spencer I, (D.E. 33),

p. 3). On April 12, 1994, the court sentenced defendant to 210 months' imprisonment for armed

bank robbery and 60 months' imprisonment for use of a firearm during a crime of violence to run

consecutively to the 210-month sentence. (Id. at 4). In Spencer II, on August 15, 1994, defendant

pleaded guilty, pursuant to a plea agreement, to one count of attempted escape from custody, in

violation of 18 U.S.C. § 751, and two counts of aggravated or felonious assault on a federal officer,

---

[1]     As explained in full below, the United States Court of Appeals for the Fourth Circuit consolidated Spencer I
with Spencer II.

in violation of 18 U.S.C. § 111. (Spencer II, (Aug. 15, 1994)). On September 6, 1994, the court sentenced defendant to 60 months' imprisonment for attempted escape from custody and 77 months' imprisonment for assault on a federal officer to run concurrently with the 60-month sentence. (Id. (Sept. 6, 1994)). The sentence in Spencer II was to run consecutively to the sentence in Spencer I. (Id.).

Defendant appealed the sentence in Spencer II to the United States Court of Appeals for the Fourth Circuit. (Id. (Sept. 13, 1994)). The Fourth Circuit vacated the sentence and remanded for resentencing. (Id. (D.E. 20)). At resentencing, the court instituted the same sentence but ordered that 25 months of the sentence to run consecutively to the sentence in Spencer I with the remaining time to be served concurrently. (Id. (D.E. 23)).

On June 2, 2020, defendant filed the instant pro se motion for compassionate release in Spencer I. (Spencer I, (D.E. 72)). On June 18, 2020, defendant filed a memorandum in support of his motion with the aid of counsel. (Id. (D.E. 78)). That same day defendant filed the instant motion for compassionate release in Spencer II with the aid of counsel. (Spencer II, (D.E. 37)). The government responded in opposition to both motions. (Spencer I, (D.E. 81); Spencer II, (D.E. 46)). Defendant replied in both cases. (Spencer I, (D.E. 82); Spencer II, (D.E. 47)).

On July 31, 2020, the court denied defendant's motion for compassionate release in Spencer I. (Spencer I, (D.E. 84)). Defendant appealed the decision to the Fourth Circuit. (Id. (D.E. 85)). On March 1, 2021, the court denied defendant's motion for compassionate release in Spencer II, which defendant also appealed. (Spencer II, (D.E. 49, 52)).

On November 10, 2021, the Fourth Circuit remanded the decision in Spencer II for further proceedings directing the district court to (1) address the alteration of defendant's release date due

2

to an infraction in a non-speculative fashion and (2) provide a more robust and detailed discussion of the 18 U.S.C. § 3553 factors. (Id. (D.E. 60), at p. 4). On February 7, 2022, the Fourth Circuit also remanded the decision in Spencer I for further proceedings directing the district court to provide a more robust and detailed discussion of the § 3553 factors. (Spencer I, (D.E. 89), at pp. 5–6). Additionally, the Fourth Circuit transferred Spencer I from the Northern Division of the Eastern District of North Carolina to the Western District and consolidated the case with Spencer II. (Id. at 6).

On January 24 and April 29, 2022, defendant filed additional memoranda in support of the motions for compassionate release in Spencer II and Spencer I, respectively. (Spencer I, (D.E. 93); Spencer II, (D.E. 63)). On February 17 and May 11, 2022, the government filed renewed responses in opposition to the instant motions in each case. (Spencer I, (D.E. 95); Spencer II, (D.E. 69)).

## COURT'S DISCUSSION

A.    Legal Standard

Title 18 U.S.C. § 3582(c) provides that a court may modify a term of imprisonment under certain circumstances, including the doctrine of compassionate release where "extraordinary and compelling reasons warrant . . . reduction." 18 U.S.C. § 3235(c)(1)(A)(i). A defendant may file a motion for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Id. § 3582(c)(1)(A).

3

The court may reduce a defendant's sentence if it "first [finds] that 'extraordinary and compelling reasons warrant such a reduction,' then consider[s] the § 3553(a) factors, and ultimately determine[s] that the requested reduction [is] consistent with the 'applicable policy statements issued by the Sentencing Commission.'" United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (quoting 18 U.S.C. § 3582(c)(1)); see also United States v. Hargrove, 30 F.4th 189, 194–95 (4th Cir. 2022). The court has broad discretion in making its determination. Kibble, 992 F.3d at 330.

The Sentencing Commission has not issued a policy statement applying to defendants' motions for compassionate release, and the court may "consider any extraordinary and compelling reason for release that a defendant might raise." States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020). Although "a district court must not entirely rely upon [U.S.S.G. § 1B1.13 cmt. n.1] when considering a defendant's motion for compassionate release," it provides "helpful guidance" to determine whether the defendant "has demonstrated extraordinary and compelling reasons for release." United States v. Malone, 57 F.4th 167, 174 (4th Cir. 2023). Application note one to § 1B1.13 provides the following circumstances which may constitute extraordinary and compelling reasons:

(A)     Medical Condition of the Defendant.

> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

> (ii) The defendant is

>> (I) suffering from a serious physical or medical condition,

4

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(B)     Age of the Defendant. The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(C)     Family Circumstances.

(i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

(ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

(D)     Other Reasons. As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13, app. n.1.

Relying on § 1B1.13 cmt. n.1(A)(ii), the Fourth Circuit held a defendant may demonstrate extraordinary and compelling reasons if "the risk of contracting COVID-19 in a prison is higher than the risk outside the prison and . . . the inmate's preexisting medical condition increases that individual's risk of experiencing a serious, or even fatal, case of COVID-19." United States v. High, 997 F.3d 181, 185 (4th Cir. 2021). This court has also found extraordinary and compelling reasons to exist based on family hardship in which a family member, who is not a spouse or child,

5

requires additional care. <u>United States v. Robinson</u>, No. 7:11-CR-153-BO-4 (E.D.N.C. June 16, 2021).

As provided in § 3553(a), the court must consider the following factors in determining the particular sentence to be imposed:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and] . . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

18 U.S.C. § 3553(a). When considering a motion for compassionate release, the court should "reconsidered the § 3553(a) factors in view of the extraordinary and compelling circumstances present" in a defendant's case. <u>Kibble</u>, 992 F.3d at 332.

B.      Analysis

1.      Exhaustion of Administrative Remedies

Defendant asserts he has exhausted his administrative remedies where he submitted his request for compassionate release to the warden on September 16, 2020, and the warden failed to take action within thirty days of the request. (<u>Spencer II</u>, (D.E. 47-1); <u>Spencer II</u>, (D.E. 63), at p. 2). The government argues that defendant has failed to exhaust administrative remedies but

6

provides no evidence disputing that provided by defendant.  (See Spencer I, (D.E. 81), at p. 1; Spencer II, (D.E. 46), at p. 1).  Accordingly, the court finds defendant has exhausted his administrative remedies.

2.   Extraordinary and Compelling Reasons

The court next addresses whether defendant has demonstrated extraordinary and compelling reasons warranting reduction of his sentence.  Defendant requests compassionate release on the following bases: (1) his risk of contracting COVID-19 in a prison is higher than the risk outside the prison and his preexisting medical conditions of diabetes and sleep apnea, and history of pulmonary embolism, increase his risk of suffering severe complications should he contract COVID-19; (2) his mother has recently been diagnosed with Alzheimer's Disease and requires defendant's aid with her care; (3) the Sentencing Guidelines were mandatory at the time defendant's sentence was imposed; and (4) if sentenced today, defendant would no longer be sentenced as a career offender.  (Spencer I, (D.E. 78), at p 1–2; Spencer I, (D.E. 93), at p. 3, 5–6, 8; Spencer II, (D.E. 37), at p. 2; Spencer II, (D.E. 63), at pp. 4–7).

Defendant has failed to present any evidence that the Federal Bureau of Prisons medical staff is unable to manage his health issues.  Moreover, although defendant originally refused to be vaccinated, defendant has now been vaccinated against COVID-19.  (Spencer I, (D.E. 95), at p. 7; Spencer I, (D.E. 96-1); Spencer II, (D.E. 63-3); Spencer II, (D.E. 69), at p. 22).  He cannot use his refusal to be vaccinated to characterize his risk of contracting COVID-19 to be an extraordinary and compelling reason for release.  See United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an "extraordinary and compelling" justification for release.").

Further, because defendant has now been vaccinated and makes no argument that the vaccine is ineffective for him, he has not demonstrated extraordinary and compelling reasons for release based on his own health and risk of contracting COVID-19. See United States v. Brown, No. 7:13-CR-44-FL-1; 2021 WL 2481676, at *2 (E.D.N.C. June 17, 2021) (finding defendant failed to demonstrate extraordinary and compelling reasons for release where defendant had been vaccinated (collecting cases)).

As noted above, defendant also seeks compassionate release on the basis that his mother has been diagnosed with Alzheimer's, and he intends to care for her upon his release. (Spencer I, (D.E. 93), at pp. 6, 8; Spencer II, (D.E. 63), at pp. 4, 6). The court acknowledges the gravity of defendant's mother's diagnosis and that her health is declining. However, other than the statement that defendant's sister informed him of their mother's diagnosis, no evidence is provided showing the severity of his mother's disease and whether she requires a caretaker at this time. (See Spencer I, (D.E. 93), at p. 8; Spencer II, (D.E. 63), at p. 6). In fact, defendant acknowledges that his mother continues to live in an apartment alone, and he does not intend to live with her upon release. (Spencer I, (D.E. 93), at p. 8; Spencer II, (D.E. 63), at p. 6). Accordingly, the court finds defendant has not demonstrated extraordinary and compelling reasons for release on this basis. See Brown, 2021 WL 2481676, at *3 (finding defendant failed to demonstrate extraordinary and compelling reasons where he failed to submit evidence that he was the only caregiver available for his family member).

Next, defendant argues that "the fact that the Sentencing Guidelines were mandatory at the time of imposition of sentence" constitutes extraordinary and compelling reasons for release. (Spencer II, (D.E. 63), at p. 5). Defendant offers no further argument or factual support. The court

8

finds such a conclusory and unsupported argument does not demonstrate extraordinary and compelling reasons.

Lastly, the court considers defendant's assertion that he would not be considered a career offender if sentenced today and, thus, would have a much lower sentence. (Spencer I, (D.E. 93), at p. 5). Specifically, defendant argues that his two felony convictions for sale of cocaine would no longer qualify as controlled substance predicate convictions for a career offender designation pursuant to United States v. Campbell, 22 F.4th 438 (4th Cir. 2022). In Campbell, the Fourth Circuit determined that the West Virginia law making it unlawful "for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance" was not a controlled substance predicate offense for purposes of the career offender enhancement because the definition of "delivery" in the West Virginian statute included "attempted delivery." Id. at 442, 449 (citing W. Va. Code §§ 60A-1-101(h), 60A-4-401(a)).

In the instant case, defendant has two convictions for the sale of cocaine, which constitute two separate predicate offenses for the career offender enhancement. See U.S.S.G. § 4B1.2(c). North Carolina sale of cocaine has previously been held to be a proper predicate offense for career offender purposes. See, e.g., Snead v. United States, Nos. 5:09-CR-281-1H, 5:14-CV-358-H, 2017 WL 3493615, 4* (E.D.N.C. Aug. 14, 2017); Caldwell v. United States, Nos. 5:14-cv-181-RLV, 5:12-cr-RLV-DCK-1, 2015 WL 1186359, *3 (W.D.N.C. Mar. 16, 2015). Furthermore, under North Carolina law, the legal definition of "sale" is different from "delivery" and, thus, does not include "attempted delivery" like under West Virginia law. See State v. Carr, 145 N.C. App. 335, 343 (2001). In Carr, the North Carolina Court of Appeals explained,

> [T]he term "sale," in the context of the North Carolina Controlled Substances Act, means the exchange of a controlled substance for money or any other form of

9

consideration. We believe that this interpretation of the term "sale" is consistent with the legislative intent behind N.C. [Gen. Stat.] § 90–95(a)(1) to prevent the manufacture and transfer of controlled substances. Having defined the terms "deliver" and "delivery" to mean the mere transfer or attempted transfer of a controlled substance, we believe the Legislature intended "sale" to encompass any such transfer in exchange for consideration.

Id. Further, "sale" of cocaine is a higher-class felony than "delivery" of cocaine. See N.C. Gen. Stat. § 90-95(b)(1).

Accordingly, the court finds defendant's reliance upon Campbell is misplaced, and defendant would qualify for the career offender enhancement if sentenced today. Thus, defendant has failed to demonstrate extraordinary and compelling circumstances justifying his release.

3.     Section 3553(a) factors

Even if defendant had demonstrated extraordinary and compelling reasons for release, he fails to show that reduction of his sentence is consistent with the § 3553(a) factors. Kibble, 992 F.3d at 330–31 (discussing the § 3553(a) factors and noting it was defendants' burden to demonstrate factors weighing in favor of sentence reduction); McCoy, 981 F.3d at 286 (providing that a court must make decisions on sentence reduction with "full consideration of the defendants' individual circumstances"). Here, although defendant's original federal conviction was for one count of armed bank robbery and one count of using a firearm in a crime of violence, defendant was found to be responsible for five violent bank robberies between June 19 and December 24, 1992. (Spencer I, (D.E. 69), ¶¶ 3–4). During the time of the robberies, defendant was on probation related to a state conviction. (Id. ¶ 16). In four of the five robberies, defendant acted alone, but during the fifth robbery, he had two accomplices. (Id. ¶ 3). At each of the robberies, defendant was armed with "weapons ranging from a sawed off shotgun to an Uzi type weapon." (Id.). On three occasions, defendant locked bank employees in the vault before escaping, and on one

10

occasion, he threated to "blow a teller's head off." (Id.). Defendant stole a total of $277, 546.00. (Id.).

Moreover, while awaiting sentencing on the above conduct, defendant attempted to escape from Vance County Jail on January 29, 1994. (Spencer II, (D.E. 50), ¶ 3). On the evening of January 29th, an unidentified male called claiming to be defendant's attorney and requested to speak with defendant. (Id. ¶ 4). The unidentified male was told to leave a telephone number and defendant would call him back. (Id.). Defendant was informed of the call and escorted to the processing area of the jail. (Id.). Upon arrival, defendant requested to use the restroom and was out of view for several minutes. (Id.). Defendant was escorted back to the processing area to make the call, but the call would not go through. (Id.). It was later learned that the telephone number was not associated with a listed attorney. (Id.).

As defendant was being escorted back to the cellblock area, defendant pulled a shank on the escorting officer and stated he wanted to get out. (Id. ¶ 5). The officer struck defendant in the mouth and a scuffle ensued. (Id.). The sergeant in the security control booth witnessed the altercation and tried to call assistance from the cellblock. (Id.). During the altercation, defendant was pushed up against the unsecured control booth door. (Id.). Defendant entered the control booth as the sergeant was dialing 911. (Id.). Defendant put the shank to the sergeant's throat, led her to the processing area, and warned her he would use the weapon if needed. (Id.). A lieutenant located in the processing area told defendant to calm down and that he would let defendant out. (Id.). Defendant continued to hold the shank to the sergeant's throat and requested that another inmate be released. (Id.). When the request was unsuccessful, defendant ordered the lieutenant to open the door to the jail lobby. (Id.).

11

Residents living across the street witnessed the altercation in the jail lobby and called the Henderson Emergency Communications Center. (Id.). A sheriff's deputy arrived, and the lieutenant shouted to him that defendant was trying to escape. (Id. ¶ 6). Defendant charged out the front door of the jail, ran into the deputy, and they both fell to the ground. (Id.). At this time, another deputy and other jail officers arrived and subdued defendant. (Id.). Defendant was taken into custody and placed in seclusion. (Id.). Defendant later admitted he fashioned the weapon from a mop bucket handle and that he had assistance from an outside party. (Id.).

Furthermore, defendant has an extensive criminal history over a less than five-year period of time, including violent offenses and offenses involving firearms. (See id. ¶¶ 11–17). On March 1, 1990, defendant was arrested for sale of cocaine when a confidential informant made two controlled purchases of crack cocaine from defendant. (Id. ¶ 11). A search of defendant's residence revealed 12 bags of crack cocaine, two pistols, and $2, 141.00. (Id.). On June 6, 1990, defendant was arrested for assault on a female when he hit his girlfriend in the eye with his fist, hit her in the mouth, and pushed her around. (Id. ¶ 12). On August 2, 1990, defendant was again arrested for sale of cocaine when he sold .2 grams of cocaine base to an undercover officer. (Id. ¶ 13). On December 14, 1992, defendant was arrested for carrying a concealed weapon, an Intratec, tec 22 semi-automatic handgun. (Id. ¶ 15). On January 7, 1993, defendant was arrested for maintaining a vehicle to keep or sell a controlled substance. (Id. ¶ 16). On January 22, 1993, defendant was arrested for discharge of a weapon into an occupied property and assault with a dangerous weapon on an officer. (Id. ¶ 17). Defendant discharged a 9mm handgun into the car of the victim, and when officers tried to arrest defendant, defendant fired shots at the officers. (Id.). All of the above arrests resulted in convictions. (See id. ¶¶ 11–17).

12

Defendant has also had poor performance while on probation. Defendant has had probation unsuccessfully terminated due to failure to keep office visits, continued criminal behavior, and "length of incarceration imposed by federal and state courts." (Id. ¶ 13). Defendant also acknowledges that his release date was moved to a later date due to an infraction when he and another inmate fought. (Spencer II, (D.E. 63), p. 6). Defendant had been on the phone with his sister, and his sister had informed him of their mother's Alzheimer's diagnosis. (Id.). The other inmate hung up the phone on defendant's sister, and defendant pushed the inmate. (Id.). Defendant was written up, placed in the Special Housing Unit, and lost 22 days of good time credit. (Id.).

The court acknowledges defendant's projected release date is April 24, 2024, and he has served a significant amount of his sentence. (Spencer I, (D.E. 93-1), p. 1). Additionally, defendant works as an orderly, obtained his GED, and completed 16 education courses. (Spencer I, (D.E. 93-3), p. 1–2). Defendant has only four infractions while incarcerated, one of which is the fight mentioned above. (Spencer II, (D.E. 66-1), at p. 1; see also Spencer II, (D.E. 47), at pp. 5–6; Spencer II, (D.E. 63), p. 6). Defendant has also paid $10,000.00 of the $56, 518.00 he was ordered to pay in restitution in Spender I. (Spencer I, (D.E. 33), at p. 4; Spencer II, (D.E. 63), p. 6).

While the court commends defendant for his rehabilitative efforts, such efforts do not outweigh the seriousness of defendant's extensive criminal history which occurred over a short period of time very shortly after defendant reached adulthood. Additionally, the underlying federal convictions demonstrate defendant's willingness to engage in criminal behavior requiring patience and planning. Defendant's use of firearms in several of his convictions with the intent to either threaten or injure others, including law enforcement, is alarming.

13

The court has fully considered the full record of this case and defendant's arguments. Pursuant to § 3553(a), it finds defendant's sentence continues to be necessary given the serious natures and circumstances of the underlying offenses and defendant's criminal history, and to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and promote respect for the law.

## CONCLUSION

Based on the foregoing, defendant's motions for compassionate release (United States v. Spencer, No. 2:92-CR-26-M-1, (D.E. 72); United States v. Spencer, No. 5:94-CR-54-M-1, (D.E. 37) are DENIED.

SO ORDERED, this the 26Th day of _____ May _____, 2023.

RICHARD E. MYERS, II
Chief United States District Judge

14